**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DWIGHT T. AMBO** | **CIVIL ACTION** |
| **VERSUS** | **NO. 26-1599** |
| **K. VAN HALEN, ET AL.** | **SECTION "I"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Dwight T. Ambo, a Louisiana prisoner, filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983. Ambo sued Deputy K. Van Halen and Deputy Cartner.

In his Statement of Claim, Ambo asserts, without corrections to grammar or spelling, as follows:

> I was being placed on the bench by Deputy Van Halen at 5:30 p.m., an between 6:30 p.m. on August 21, 2025, an Officer Cartner walked up to me, and punched me in my mouth a couple of times. Also split my lip open. This was unnecessary! It's all on video. B-building bench is where he used over aggressive force on me at.[1]

Attached to Ambo's complaint is a St. Tammany Parish Jail inmate grievance alleging that Deputy Cartner used "overly aggressive force" when Ambo was on the B-building bench.[2] According to the grievance, Van Halen witnessed the incident.[3] Ambo requests the Court "[i]nvestigate this matter" and states that he wants "justice for [his] pain and suffering."[4]

To better understand the factual bases of Ambo's claims, the Court held a Spears hearing in this matter on September 15, 2026.[5] See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a

---

[1] Rec. Doc. 3 at 5.
[2] Rec. Doc. 3-1.
[3] Id.
[4] Rec. Doc 3 at 6.
[5] Rec. Doc. 8.

manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005–06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

Ambo testified that he stood trial on criminal charges on August 19–20, 2025, and was ultimately convicted. He was remanded to the St. Tammany Parish Jail and was going through the booking process on August 21, 2025. On that date, Ambo was in a holding cell with other inmates who were questioning him about bonding out and other things for which he was ineligible as he had been convicted and was awaiting sentencing. Ambo was upset about the outcome of his trial and spoke to Deputy Van Halen "about what [he] was going through" after having lost at trial. When the Court questioned whether Ambo had any problem with Van Halen, Ambo responded, "none whatsoever."

Ambo testified that Van Halen took him out of the holding cell and escorted him to the cool down bench so that he could have some time to himself. Ambo sat down on the bench and was placing his hands in front of him so that Van Halen could handcuff him to the cool down bench. "Out of the blue," Deputy Cartner approached and asked Van Halen whether she was having any issues or problems with Ambo. Both Van Halen and Ambo told Cartner that they were "cool and had no issues." Before Van Halen could handcuff Ambo, Cartner, "out of nowhere," attacked Ambo for "no reason." Cartner pushed between Van Halen and Ambo and was chest to chest with Ambo. Ambo's back hit the wall and Cartner struck him two to three times in his face, splitting open Ambo's mouth. Ambo testified that this was his first ever encounter with Cartner and that he had "no idea" why Cartner attacked him.

According to Ambo, Van Halen pushed Cartner off Ambo, escorted Cartner out the door, handcuffed Ambo to the cool down bench, and came to his aid. Ambo testified that he was "bleeding real bad" as a result of the attack. Ambo explained that Van Halen made sure that he received medical treatment. Van Halen waited with Ambo while his wound was wrapped in gauze. Ambo was given an antibiotic mouthwash and pain medication. Ambo claimed that, in addition to his split lip, he suffered from a bad headache. He claimed that he had difficulty eating for about six weeks but, after that, the pain decreased and his mouth started healing.

Ambo testified that he did not receive a disciplinary action and was not criminally charged as a result of the incident with Cartner. He testified that Van Halen told him that she provided internal affairs with the camera footage depicting the incident.

When asked why he named Van Halen as a defendant, Ambo explained that he named everyone involved in the incident. He candidly admitted that Van Halen did not do anything to him to cause physical injury, but rather helped him. Ambo explained that he considered Van Halen a "witness" to the incident.

## I. Mandatory Screening Provisions

"There is no absolute right to be allowed to proceed in forma pauperis in civil matters; rather it is a privilege extended to those unable to pay filing fees when the action is not frivolous or malicious." Startti v. United States, 415 F.2d 1115, 1116 (5th Cir. 1969). Title 28 U.S.C. § 1915(e)(2) thus directs, in relevant part, that courts "shall dismiss [an in forma pauperis plaintiff's] case at any time" if the plaintiff's complaint fails to state a claim upon which relief may be granted or is determined to be frivolous.

In addition, because Ambo is incarcerated, he is subject to the screening provisions of 28 U.S.C. § 1915A. That statute mandates that federal courts "review, before docketing, if feasible

or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."[6] 28 U.S.C. § 1915A(a). Regarding such lawsuits, the statute provides:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

A claim is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). When making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not plead "enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (footnote, citation, and quotation marks omitted). The United States Supreme Court has held:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability

[6] "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

> requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

## II. Analysis

Ambo filed this action pursuant to 42 U.S.C. § 1983. In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

For the following reasons, even when Ambo's complaint, as expounded by his Spears testimony, is liberally construed,[7] any federal civil rights claim against Deputy Van Halen should be dismissed as frivolous and/or for failure to state claim. Ambo's federal civil rights claim of excessive force against Deputy Cartner, however, should be allowed to proceed at this time pending further development.

### A. Deputy Cartner

Ambo alleges that Deputy Cartner hit him in the face two to three times without provocation while he was seated on the cool down bench causing injury to his mouth and head.

---

[7] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

Claims of excessive force used to subdue a convicted prisoner are analyzed under the Eighth Amendment, which prohibits prison staff from causing the unnecessary and wanton infliction of pain. Whitley v. Albers, 475 U.S. 312, 320 (1986). In evaluating an Eighth Amendment claim of alleged use of excessive force by a prison official upon a convicted inmate, the Supreme Court has instructed that "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillan, 503 U.S. 1, 6–7 (1992); Martin v. Seal, 510 F. App'x 309, 312 (5th Cir. 2013); Mosley v. White, 464 F. App'x 206, 211–12 (5th Cir. 2010). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.' " Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). To make this determination, a court considers: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered. Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998); Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992). Although the plaintiff is not required to show a "significant injury," he is required to show that he has suffered some injury that is "more than a *de minimis* injury." Lincoln v. Turner, 874 F.3d 833, 846 (5th Cir. 2017) (quoting Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001)). "Any force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." Alexander v. City of Round Rock, 854 F.3d 298, 309 (5th Cir. 2017).

Ambo's allegations state a claim of excessive force against Deputy Cartner. Accepting his asserted facts as true, as the Court must do at this stage, Moore v. Mabus, 976 F.2d 268, 270 (5th

Cir. 1992), he alleges that Cartner struck him in the face two to three times, with no warning, and without need or provocation, and, as a result, Ambo suffered an injury to his mouth and head, which caused him pain and difficulty eating. At this time, the Court must find that Ambo's claim of excessive force against Deputy Cartner should be allowed to proceed forward for further proceedings.

**B. Deputy Van Halen**

As noted, Ambo named Deputy Van Halen as a defendant. Ambo candidly admitted, however, that Van Halen did not physically harm him, but instead helped him. He testified that he named Van Halen in the complaint because she was present at the time of the incident and witnessed Cartner's alleged use of force.

Under a theory of bystander liability, an officer may be liable to an individual if the officer (1) knows that another officer is violating the individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. Whitley v. Hanna, 726 F.3d 631, 646–47 (5th Cir. 2013). "Bystander liability applies where a plaintiff properly alleges another officer's use of excessive force." Carrillo v. Buendia, No. 2:20-CV-28, 2020 WL 4584380, at *14 (S.D. Tex. Aug. 10, 2020) (citing Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995). Here, Ambo's testimony does not demonstrate that Van Halen had a reasonable opportunity to prevent Cartner's alleged excessive use of force. Rather, Ambo testified that Cartner's attack was sudden, "out of the blue" and "out of nowhere." He further testified that Van Halen did not acquiesce to the alleged use of force, but instead intervened. According to Ambo, Van Halen pulled Cartner off Ambo, escorted Cartner out of the area, and rendered aid to Ambo. Ambo explained that he believed Van Halen to be a witness, rather than a defendant. The failure to set forth any facts to suggest that Van

Halen personally violated any of Ambo's constitutional rights precludes any effort by Ambo effort to state a claim against her.

As such, Ambo's federal civil rights claim against Van Halen should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted.

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Dwight Ambo's federal civil rights claim against Deputy K. Van Halen be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Ambo's federal civil rights claim against Deputy Cartner for excessive force be allowed to proceed at this time pending further development.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); see Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 17th day of September, 2026.

Janis van Meerveld

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**